The first case on the calendar is Brown v. Palmateer. When you're ready. Good morning, and may it please the Court. Anthony Bornstein on behalf of the petitioner Gilbert Brown. Your Honors, the Oregon Board of Parole violated Mr. Brown's rights under the Ex Post Facto Clause when it applied more restrictive standards for release when it denied Mr. Brown parole in 1995. At the time of Mr. Brown's offenses, it was the official and public board policy to release an inmate who had been given a release date if there was no psychologist or psychiatrist diagnosis of a present severe emotional disturbance. So is that this positive issue, Mr. Bornstein, whether or not there was an actual diagnosis to that effect? So it doesn't matter whether the board has any discretion at all. The discretion has to be based upon a psychiatrist diagnosis. Is that your position? Yes, Your Honor, and it has to be based on the psychologist diagnosis. The psychologist diagnosis was the determinative criteria as made known in a number of sources by board chair, by other members of the parole board, in statements to the legislature and in statements to the media. So what's the purpose of the parole board? Does it just sit as sort of a rubber stamp to make sure that the psychiatrist put the right language in the report? The parole board, under its interpretation and public interpretation of the law, had a particular procedure as to what it would do vis-a-vis an inmate's release when applying and when receiving a psychologist diagnosis. You haven't answered my question. I'm sorry, Your Honor. It isn't your position taken to its conclusion that the parole board has no function here other than to make sure that the psychiatrist has included the correct wording in the report. And if there's no diagnosis to the effect the statutory language provides, then it has to let the guy go. It would have to release the inmate under its policy if it received a professional psychiatrist or psychologist diagnosis under which the prisoner no longer presented the danger. So it has no discretion. It had no discretion under a certain set of circumstances. There's only one circumstance, and that is in the psychiatrist report there has to be a specific diagnosis that mounts the statutory language, or I guess it's the language of the rule, and that's the only function that the board has under your argument. The board first establishes a release date of the prisoner. And as the release date nears, Your Honor, then the board requires or appoints a psychologist to conduct an evaluation, a psychological evaluation to determine whether the prisoner presents a severe emotional disturbance. So it's purely whatever the psychologist says. If the psychologist says he doesn't pose a severe whatever the language is, then that's it. That was it up until the point that the board found it necessary to expand its authority and discretion to disregard the psychologist's conclusion or evaluation. Suppose the psychologist didn't actually use the magic words, but the board read the report and looked at whatever else was in the inmate's file and decided that he did pose a danger to the community. Is it your position that the board would still have no discretion to withhold his parole? It's not our position that there had to be magic words, severe emotional disturbance, but it would have to be the unmistakable conclusion drawn from that language in the report, from the report itself, from the evaluation. So the board can't look at anything else in the inmate's file. It can't consider the circumstances of the crime, the propensity for recidivism, the disciplinary record of the inmate while he's in prison, whether or not there is any other indication that it's safe to release him. It's just whatever the shrink says goes. For a certain segment of time under which the board had this official policy, the psychologist or psychiatrist's report on that issue was determinative. So what do we need the board for? Why don't we just hire a bunch of professional psychiatrists who evaluate the prisoners and either say let them out or keep them in? The board obviously has a number of functions vis-à-vis protection of the public. For a period of time – Oh, so the board does have some discretion. The board doesn't have discretion on this particular issue, Your Honor. The board – The protection of the public has no discretion whatsoever. It has to release the person even if it thinks that he poses the danger to the community because the psychiatrist didn't say so. That is correct. And we know that from how the board operated in the cases cited to the Oregon courts in the Court of Appeals. The Cal Brown case, which is discussed at length, the board felt that this prisoner was a very serious danger to the community, yet nevertheless publicly announced that it released Mr. Brown because its hands were tied. The same exact situation came up in the case of Russell Obremsky, an inmate whose prior cases appeared before this court, and in a letter from the board chair quoted in this court's 1990 decision in Obremsky v. Moss, the then chair of the board, Hazel Hayes, publicly stated exactly that, Your Honor, that the board found the psychologist's report to be determinative. Well, what do we do with the finding by the Oregon Court of Appeals that the evaluation did contain a diagnosis and it's holding that the parole board did comply with the rules that were in effect in 1982 when Mr. Brown committed his crime? All the court held was that the statute, by reference to its decision in Weidner v. Armanekis, the court's sole holding in this case was that the statute authorized the board to come to its own conclusion. But nevertheless, the board's official interpretation and policy had the force of law. An ex post facto violation can result from three separate governmental actions, three independent actions. Let me ask a flip of Judge Tallman's question on the issue of how much discretion, if any, the board had. I understand your position to be that if there is no diagnosis, the board has no discretion based upon a prediction of future dangerousness. The board has to let him go. On the other hand, if there is a psychiatric or psychological diagnosis, at that point, as I read the statute, the board did have discretion as to say if there is such a diagnosis, the language says the board may decide to hold him longer. Isn't that right? So there's discretion in the circumstance where the report comes in. The board may decide to disregard it if it wishes to. It doesn't have to abide by it. The statute, as ultimately interpreted by the Oregon Court of Appeals in its Weidner decision, found that the board did have greater discretion as a matter of statutory construction than the board previously and heretofore announced in its public policy. But the policy change, the retroactive application of the court's new policy, is what constituted the ex post facto violation in this case. Well, there's a substantive difference, isn't there, in the board. The language of the new statute is if the board finds such and such. The board didn't make any finding in the first, in the old statute. The psychiatrist made the finding. Right. And I submit that. Did you ever challenge or anybody ever challenge that in the local courts as an illegal delegation of legislative authority? I know of no such delegation challenge, Your Honor. But I do think that that change that the legislature ultimately adopted, reconfiguring the diagnostic authority from the treatment professional to the board itself, was a substantive change. We don't have a very good record of how the how this alleged change in the board's policy was either accomplished or implemented. Because the child judge, somebody convinced him not to let you discover all that stuff. But we'll find out about that from the other side maybe. Madam Secretary, that is our alternative request. If the court does not authorize, find the ex post facto violation on the record, it would be in the alternative to remand the case for discovery. Okay. I think we've got your argument in hand. You've got about a minute. Do you want to save that for rebuttal? I'd like to refocus the court's attention just for a minute, if I may. It's the state's position that Widener v. Arminicus and the follow-up decision, Godleski v. Morrow, which addressed the relevant time period of petitioner's claims of crimes in 1982, are both ineligible. Those are state law determinations on a state law issue. The only way the federal courts can reach that issue, as petitioner argues, is if there's an obvious subterfuge to evade consideration of the federal issue. And that's the focus of my argument this morning, is that there simply is no evidence of an obvious subterfuge in either petitioner's case or in the Widener cases and their progeny. Now, subterfuge is a nasty word. Is it sufficient for purposes of Mr. Bornstein's argument that the construction of the statute has clearly been changed? I'm avoiding for the moment the word subterfuge, but let us assume for purposes of argument that the construction of the statute before the Widener case was X, the construction of the statute after the Widener case is Y. And let's say that if that were a statutory change, that is to say, this wasn't a court change, the statute was redrafted to say X instead of Y, that that would be ex post facto. Does it make a difference that the court did it instead of the legislature? I don't think so, Your Honor, and I don't think that that's evidence. I think that's the wrong answer from your standpoint, though. Do you understand what I'm saying? That is to say, I'm hypothesizing that if there were a legislative change where the statute was changed, the application of the new statute would be an ex post facto violation. I'm asking you if the court does precisely the same change by the magic of statutory construction, does it make a difference that the court did it compared to a legislature? I guess what I'm not understanding, Your Honor, is what change you're referring to in terms of a court decision. In other words, in 1993, the legislature amended 144.125. The court subsequently found that that was an ex post facto violation in the Meadows decision. Perhaps that's what you're referring to. The statute was re-amended to adopt the original language again. Well, that was just a deletion of the word severe, wasn't it? No, actually, it was a substantive change in the actual statute. What did the court say was ex post facto about it? I discussed that, Your Honor, in the red brief at page. Well, let's see, it was the Meadows at page 219. Yes, I think that's correct, Your Honor. I'm not sure that I can readily find it. Well, what was ex post facto about it? Well, the court in Meadows held that the change in the language in 1993 when the legislature amended the statute made it more onerous for petitioners to gain release or inmates to gain release on parole. Because it narrowed the board's discretion. Well, isn't severe just a sort of an epithet that legislators use in describing conditions that they don't know anything about? It could be. And that certainly was a change in the new statute with the deletion of the word. Was there a change in the function of the board as a fact finding agency? No. The old statute said the board may do such and such if the psychiatrist finds something. And the new statute says that if the board finds something, then the board may do whatever it does. Is it your position there was a change in the discretionary power of the board? No. Or there was no change? No. I think there was a change in the inquiry, the question the board had to answer in making parole release decisions. But if I may draw the court's attention... Can you help me understand that answer? You say there's a change in the inquiry. What's the change in the inquiry? Well, again... I don't need it out of your brief. I just need it from you. Well, I can't accurately repeat the amended 1993. Oh, okay. I'm sorry. Go ahead. I'd have to look for the exact words of the statute. Take your time and find what you need to find. And compare them. Okay. The new amended language in 1993, the standard was... ...condition or disorder predisposing the prisoner to the commission of a crime... ...to a degree rendering the prisoner a danger to the health or safety of the community... Right. ...as opposed to present severe emotional... Right. But what's also a change between the earlier statute and the later statute is the earlier statute says... ...if a psychiatric or psychological diagnosis of present severe... And the second statute, the later statute, says if the board finds leaving out the... Correct. ...if a psychiatric or psychological diagnosis. Correct. And I'd like to focus on that. Correct. Is it your contention that that change leaving out psychiatric or psychological diagnosis... There's no effective change when you've moved to the later statute when that language is dropped? I don't believe that that's a change. Because? Well, again, Your Honor, repeat your question. I'm having a little bit of a difficulty finding, focusing on what happened in 1993 as opposed to what happened... ...and how the board construed the statute in 1982, which is the relevant time frame. Okay. Here's the argument that Mr. Bornstein has made, as I understand it. And that is prior to the statutory change, we dealt with the statute that required, that said... ...if a psychiatric or psychological diagnosis of present severe, da-da-da-da-da, emotional disturbance. And his argument is unless there was a psychiatric or psychological, that is to say a professional diagnosis... ...the board could not keep the prisoner any longer. He says that once the statute is amended, to say if the board finds... ...the premise of the psychiatric or psychological diagnosis is no longer required... ...and it's simply the board's judgment as to dangerousness. Do you disagree with him as to the consequence of that statutory change? Is he simply misdescribing the meaning of that change? I don't believe that the new statute required the board to only rely on the psychological evaluation. Yeah, but what about the old statute? The old statute does not. And that's the Widener decision. And the Widener decision is 1998. That's correct, Your Honor. Maybe this question is for Mr. Bornstein on rebuttal. But do we have any Oregon cases prior to the Widener decision that say that the diagnosis is required? No, Your Honor, we don't. And in fact, in Godleski v. Morrow, the court said in the 1981 version of the statute... ...which applies to the petitioner here, applies with equal force. The board had the discretion to rely on the entire record under Godleski at the time that's relevant to this petitioner. And in my time that's remaining, if I could draw the court's attention to Supplemental Excerpt of Record 50 and 51. This is the second court of appeals opinion denying Mr. Brown's petition for reconsideration. And on actually the beginning of the bottom of 50, the beginning top of 51, the court sets out Mr. Brown's ex post facto claim. And following the recitation from the appellate brief, the court says, We rejected that argument, the ex post facto argument, because the record did not support the petitioner's contention. So clearly what the court was saying, they weren't evading the ex post facto issue. They said his evidence doesn't support his claim. Whatever happened in 1993, however the board or some board members construed the statute in 1993, is not relevant. As to what the board did, how it construed the statute, how it interpreted its authority in 1982. And in Godleski v. Morrill, the court of appeals said the board could rely on the entire record and that's what they did in this case. I would also draw the court's attention to the new U.S. Supreme Court opinion in Holland v. Jackson. And I supplied the court a supplemental, I see my time is up. You can finish your thought, go ahead. Okay, thank you, your honor. In Holland v. Jackson, and I supplied the court with a supplemental letter of authority and hopefully that reached you by now. The court said that the requirements of 2254E2 apply equally when there is no evidentiary hearing. So whatever evidence that petitioner submits now simply can't be considered under 2254E2. It has to be, the question is what he submitted in the state court. Okay, thank you very much. Thank you. Mr. Bernstein, you saved some time, plus Ms. Alexander ran over by a little bit. Thank you, your honor. Your honor, the most salient point I would like to make this morning is that the court in the Brown v. Palmatier, Mr. Brown's case in the Court of Appeals of Oregon did not even address the issue that he raised before it. He explained in his brief, which is fully set forth in the excerpt of record, that the Widener decision addressed a different issue, merely the interpretation of what the statute ultimately authorized. His claim was that the board's policy, which had the force and effect of law, was applied retroactively to his detriment in denying him release. Your honor, I cited in my reply brief this court's decision, Smith v. U.S. Parole Commission, which sets forth the criteria for determining whether or not a policy has the force and effect of law. And the criteria in Smith is the discretion that the board retains to modify or disregard its policy as the circumstances may require. And we know from the policy statements of the board chairs and the board members that the board's hands were tied, that they had no discretion. And that's the very reason they sought the legislative change in 1993, which was ultimately successful, to enhance or increase their policy and their authority. Thank you, Your Honor. Thank you. Thank you very much. Very useful argument from both sides. The case of Brown v. Palmettere is now submitted for decision. The next case on our calendar, and I think Ms. Alexander doesn't need to move very far, is Cohey. I'm not sure I'm pronouncing it correctly, v. Brown v. Brown v.
judges: Goodwin, W. Fletcher, Tallman